COMMONWEALTH *vs.* PATRICK MULLEN & others.

Suffolk. November 25, 1889. — January 1, 1890.

Present: FIELD, DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Indictment — Motion to Quash — Misjoinder of Parties and Offences — Election — Evidence — Exceptions — Witness — Cross-examination — Corroboration of Accomplice.*

An indictment, after describing a burglary by one, proceeded in a succeeding paragraph, without any further statement, to charge another with being accessory before the fact to the burglary committed "in manner and form aforesaid." The indictment in other counts charged the alleged principal in the burglary with distinct larcenies, and in still other counts the alleged accessory and two others with being the receivers of the stolen goods. At the trial of all the defendants together, a motion to quash was filed, on the ground that the offence of being an accessory was not properly set forth, and that there was a misjoinder of parties and offences. *Held,* that the motion was properly overruled.

If several defendants tried together upon an indictment are represented by different counsel, it is within the discretion of the judge presiding at the trial to allow them to be examined by their own counsel, and, if one defendant offers himself as a witness, to permit him to be cross-examined by the counsel for the others as to matters material to their clients, in addition to the cross-examination by the district attorney.

At the trial of an indictment charging the defendant and two others with receiving stolen goods, evidence that the defendant, upon the two saying in his presence that he was the one who gave them the goods, told one of them that he never gave him the goods, and the other that he had never seen him before, was admitted for the limited purpose of showing what the defendant said and his denials with respect thereto. Papers found in a closet accessible to the defendant, which, it appeared, were the wrappings of the stolen goods, were also admitted in evidence. Evidence that officers searching the closet contended that the defendant had in it what they were seeking, and that another officer

examined it after the defendant's arrest, it not being disputed by the defendant that the papers were actually found there, was excluded. Upon a witness testifying on cross-examination that he had never been in court before, the questions " Where ? " and " What court was it in ? " then put to him were excluded, the defendant's counsel admitting that he had no court record with which he sought to identify the witness. A witness having testified to an ineffective search made at another's instance, the question whether such other had not lied to him was excluded. The defendant's employer having testified to his good character so far as he knew, the questions whether he had made inquiries about him, and whether he had any fault to find with him, were excluded. *Held,* that the defendant had no ground of exception.

On an indictment charging the defendant in two counts with being an accessory and receiver of stolen goods, the defendant at the close of the evidence asked the judge that the government be required to elect whether it would seek a conviction upon one of the counts or the other, on the ground that they were inconsistent. The judge declined so to do, but instructed the jury that they could not convict him on both counts, and left them to apply the evidence thereto, and the jury returned a verdict upon the count charging him with being the accessory. *Held,* that the defendant had no ground of exception.

At the trial of an indictment, the judge refused to give a large number of requests for instructions presented by the defendant, but afterwards, at the close of the charge, requested the defendant's counsel to call his attention to anything in the requests not covered by the charge; and the counsel replied, that he thought everything had been covered, and that he alleged exceptions to the charge so far as it was inconsistent with the requests, and not otherwise; but did not at that time, nor in a brief upon which he submitted the case on a bill of exceptions alleged by him point out in what particulars the charge was inconsistent with the requests, and, while asserting in the brief that they were erroneous, did not show that they were so in any particular respect. *Held,* that the defendant showed no ground of exception.

INDICTMENT in six counts. The first and fourth counts charged the defendant Mullen with being an accessory before the fact to distinct breakings and enterings with intent to commit larceny by one Ellis; the second and fifth charged Ellis with distinct larcenies; and the third and sixth charged Mullen and one McGuiggin and one McCormack with receiving the stolen goods. The first count was as follows:

" The jurors for the Commonwealth of Massachusetts on their oath present, that Edward Ellis, of Boston aforesaid, on the thirtieth day of September, in the year of our Lord one thousand eight hundred and eighty-eight, at Boston aforesaid, with force and arms, a certain building there situate, to wit, the building of one Nelson H. Brown, in the daytime of said day, did break and enter with intent then and therein to commit the crime of larceny, and six clocks, each of the value of two dollars, of the property, goods, and chattels of the said

Brown, in said building then being found, did then and there, in said building, feloniously steal, take, and carry away; against the peace of said Commonwealth and contrary to the form of the statute in such case made and provided.

"And the jurors aforesaid, for the Commonwealth of Massachusetts, on their oath aforesaid, do further present, that Patrick Mullen, of Boston aforesaid, before the said felony and breaking and entering with intent to commit the crime of larceny were committed, in manner and form aforesaid, to wit, on said thirtieth day of September, with force and arms, at said Boston, did feloniously and maliciously incite, move, procure, aid, counsel, hire, and command the said Ellis the said felony and breaking and entering with intent to commit the crime of larceny in manner and form aforesaid to do and commit; against the peace of said Commonwealth and the form of the statute in such case made and provided."

At the trial of the defendants together in the Superior Court, before *Hammond,* J., Ellis was found guilty; Mullen was found guilty of being an accessory, and acquitted of the receiving; and McGuiggan and McCormack were acquitted; and the defendant Mullen alleged exceptions, which appear in the opinion. The case was submitted upon briefs.

*G. W. Searle & C. W. Wells,* for Mullen.

.*A. J. Waterman,* Attorney General, *& H. A. Wyman,* Second Assistant Attorney General, for the Commonwealth.

DEVENS, J. 1. The defendant Mullen was convicted upon two separate counts of an indictment which charged him with being an accessory before the fact to two distinct burglaries committed by Ellis. In the second of these one Miller had also been a principal, and was separately indicted therefor. The same indictment contained other counts, upon which Mullen was acquitted, charging him with being the receiver of the goods stolen on these several occasions. He moved to quash the indictment, upon the ground that his offence was not set forth in what the court termed the first count, and contended that this was a count against Ellis alone. Mullen contended, therefore, that when he was charged, in the final paragraph, with being an accessory, this was a second count, and that the reference to the offence committed by Ellis, " in manner and

form aforesaid," was not sufficient to connect it therewith, and that a full statement was again necessary of the offence committed by Ellis. This is a misconstruction of the first count by attempting to break it into distinct parts, and to make of it separate counts. It is a single count, and in describing the breaking and entering by Ellis, it does this in order to set forth clearly the crime to which it alleged Mullen to have been accessory.

Mullen further contended, under his motion to quash, that there was in the indictment a misjoinder of parties and offences. He was charged with being an accessory to the offence committed by Ellis, and to that committed by Ellis in connection with Miller, for which latter offence Miller had been previously tried and convicted, and likewise with being a receiver of the goods stolen on both occasions. The indictment also charged one McGuiggin and one McCormack with being receivers of the goods stolen on these occasions. It has long been the practice in this Commonwealth to charge a defendant with various and distinct felonies in different counts of the same indictment, when they are of the same general nature and supported by similar evidence, and where the punishments to be awarded are of the same character. It is deemed that a defendant is sufficiently protected by the power which exists in the court to order separate trials upon the different counts, where there is, in its opinion, danger that a prisoner may be embarrassed in his defence. It is well settled that this rule has not been altered by the St. of 1861, c. 181 (Pub. Sts. c. 213, § 18). *Commonwealth* v. *Cain*, 102 Mass. 487. *Commonwealth* v. *Glover*, 111 Mass. 395, 400. *Pettes* v. *Commonwealth*, 126 Mass. 242, 245. *Fitzgerald* v. *Commonwealth*, 135 Mass. 266, 269. The defendant Mullen's motion to quash was properly overruled.

2. Ellis, McGuiggin, and McCormack were, under our statute, competent witnesses for all purposes if they saw fit to testify, whether to exonerate themselves or to give evidence implicating Mullen. Pub. Sts. c. 169, § 18, cl. 3. The presiding judge could properly allow them to be examined by their own counsel, and it was equally proper, in his discretion, when Mullen offered himself as a witness, to permit him to be cross-examined by the counsel for them as to matters material to their clients,

in addition to the cross-examination by the district attorney. This necessarily resulted from the position in which Mullen had placed himself in becoming a witness.

3. A police officer named Cogan, who had arrested Mullen, testified that he asked McGuiggin and McCormack in Mullen's presence, if this man Mullen was the one who gave them the statues (which were a part of the stolen property), and that, upon both of them replying in the affirmative, Mullen said to McGuiggin, "I never gave you any statues," and to McCormack, that he had never seen him before. It is the contention of Mullen that this officer's testimony was incompetent. It was certainly incompetent to establish in any way the guilt of Mullen by the declaration of McGuiggin then made, but its reception was limited by the court only to showing what Mullen himself said, and his denial that he had ever given McGuiggin any statues. Similar remarks apply to the declaration made by Mullen at the same time, that he had never seen McCormack before. These denials might well be important, especially if there was evidence that Mullen did give the statues to McGuiggin and did know McCormack. As they were received, these statements of Mullen were competent, and the case differs from *Fitzgerald* v. *Williams*, 148 Mass. 462, where the accusation against a party of a crime which was denied by him was admitted as bearing upon the truth of the charge, and where the party's denial was less carefully limited.

4. The papers produced from a closet, to which there was evidence tending to show that Mullen had access, and which there was also evidence tending to show were wrappers of the stolen goods, were admissible. It was unimportant whether the officers who searched the closet contended that Mullen had anything in the closet such as they were in search of, and also that another officer made, after the arrest of Mullen, an examination of the closet. Questions on these matters were rightly refused by the presiding judge, it not having been disputed by the defendant that the papers were actually found as testified to.

5. The inquiry put to McGuiggin, on cross-examination by Mullen's counsel, as to his having before appeared in court, was admitted; but upon his replying in the negative, the court properly declined to allow the questions " Where? " and " What

court was it in?" to be put to him. This was entirely irrelevant, Mullen, in answer to an inquiry from the court, stating that he did not have, or propose to put in, any record from another court with which he sought to identify McGuiggin.

6. A police officer named McCusker having testified to a search made by him at the instance of Miller, who was a witness, and that he found nothing, Mullen desired to ask him, "You found Miller was lying?" This was properly excluded; it was not for the witness to characterize Miller's statements, but to testify to them, and to what he found in acting upon them, and this he had done.

7. One Weeks, the employer of Mullen, had testified to the good character of Mullen, so far as he knew. He was then asked by Mullen's counsel whether he had made inquiries as to Mullen, and whether he had any fault to find with him. These questions were properly excluded. The extent of his inquiries, or the answers to them, could not be given in evidence to strengthen the testimony of the witness, nor was the fact important, if it were so, that he had himself no occasion to find fault with him.

8. At the close of the evidence, Mullen desired that the government should be ordered to elect whether it would seek a conviction on the counts charging him with receiving stolen goods, or upon those charging him as an accessory, as these were inconsistent with one another. The court declined to do this, but instructed the jury that it could not convict on both sets of counts, and left them to apply the evidence to them. To this the defendant Mullen has no just ground of exception, and he was convicted only on the counts charging him as accessory.

9. At the close of the testimony, Mullen's counsel presented a voluminous body of instructions, which he requested should be given to the jury. Of these six were given, and at the close of the charge the judge requested the counsel for Mullen to call his attention to anything in the requests not covered by it. The counsel replied, that he thought everything had been covered, and that he alleged exceptions to the charge so far as it was inconsistent with the requests asked, and not otherwise. It was the duty of the counsel then to call attention to any respects in which the charge was inconsistent with the

requests; but without insisting upon this, it is quite clear that Mullen must now show that the charge is inconsistent with the requests in some respect in which the requests were not objectionable, and that such requests ought to have been given in order to a correct disposition of the case. Rulings requested, even if relevant to the case and legally unobjectionable, need not be given in the form or language requested. If in the form of abstract propositions, they would often, indeed, be applied to the facts by a jury with difficulty. It is sufficient if the substance of them, so far as they are correct and appropriate to the case, is given. *Commonwealth* v. *Costley*, 118 Mass. 1. *Commonwealth* v. *Cobb*, 120 Mass. 356. *Randall* v. *Chase*, 133 Mass. 210, 215. *McMahon* v. *O' Connor*, 137 Mass. 216.

The objections made in their brief by the counsel for Mullen to the instructions are in general terms, and while they assert them to be erroneous, we do not see that they show that they are so in any material respect. The instructions point out with clearness and accuracy what an accomplice is, and what may properly be deemed as corroboration of his evidence. They advise the jury against convicting on the uncorroborated testimony of an accomplice or accomplices, although they recognize the right of the jury to do so if it is fully convinced. They point out the sources to which it is to look for corroboration, which must be such as tend to connect the accused with the crime, and something beside the testimony of other accomplices. While they recognize Ellis and Miller as accomplices, they leave to the jury, under proper instructions, to determine whether McGuiggin and McCormack were so.

We do not deem it necessary to deal with these requests with the somewhat painful minuteness with which we have considered the defendant's exceptions to the evidence, or to take them up *seriatim*, and consider whether each, so far as it was necessary and unobjectionable, was given. It is sufficient to say, that, carefully examining them and collating them with the instructions actually given, we cannot perceive that the defendant Mullen has any just ground of complaint.

*Exceptions overruled.*