CLAUD FRAZEE AND WILLIAM FRAZEE v. STATE.

No. A-2356.   Opinion Filed November 11, 1915.

(152 Pac. 462.)

1.  **SEVERANCE—Right.**  When two or more persons are placed upon
    trial charged jointly with an affray, and any of them asks a
    severance in due time and according to law, the diversity of
    interests, hostility between the parties and common fairness are
    sufficient warrant for a fair and impartial trial judge to award
    separate trials to the belligerents.  Only when the public welfare
    demands, should a joint trial be required.

2.  **WITNESS—Impeachment of Co-defendant—Right.**  A co-defendant
    who is hostile to another co-defendant, who does not call him as
    a witness, has the same right to impeach such co-defendant, if
    he becomes a witness and gives adverse testimony, as he would
    any other witness testifying in the case.

*Appeal from County Court, Pawnee County;*
*Geo. E. Merritt, Judge.*

Claud Frazee and William Frazee were convicted of an
affray, and appeal.   Reversed.

*Pruiett & Sniggs,* for plaintiffs in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J.   The plaintiffs in error, Claud Frazee
and William Frazee, were convicted at the August, 1914, term
of the County Court of Pawnee county on a charge of participat-
ing in an affray upon the streets of Terlton, in said county.   The
punishment of William Frazee was fixed at a fine of five dollars
and costs.   Claud Frazee was sentenced to pay a fine of ten
dollars and costs.   It appears that the Frazees and Moores
engaged in a town fight upon the thoroughfares of the town of
Terlton, and that an information was filed charging the Frazees
and Moores jointly with an affray.   When the case was called
for trial, the Moores asked a severance; the Frazees joined in

the request. The court denied the severance and placed the parties on trial jointly. All were convicted; the Frazees, only, appeal.

The first assignment of error argued is based upon the proposition that the court erred in denying the severance as requested. Without going into a discussion of the merits of the particular question in this case, it may be observed that ordinarily persons who are jointly charged with an affray should be tried separately; that is, when two or three persons on a side are jointly charged, and have asked for a severance in due time, the diversity of interest and hostility between them should prompt an impartial judge to exercise the judicial discretion vested in him in favor of a separate trial to opposing factions; only when the public welfare demands should a joint trial be required in such cases. The only material error urged in this case will disclose more effectively the reason why this should be the practice.

The only assignment of error we find it necessary to discuss at length is based upon the proposition that the court erred in refusing to permit plaintiffs in error to show by testimony the general reputation of P. C. Moore for truthfulness or the lack of truthfulness in the community in which he resided. P. C. Moore was jointly charged with this offense, and was on trial before the same jury. He took the stand and testified against the Frazees. When the Frazees put on their testimony, they offered evidence to impeach Moore for truthfulness in the community in which he lived. The county attorney objected upon the ground that Moore being a joint defendant, could not be attacked or impeached by co-defendants until he had put his character in issue himself. The Moores through their counsel also objected for the reason that they were co-defendants, and for the further reason that they had not placed their reputation or character in issue. The court sustained the objection upon this ground. It appears that the county attorney, counsel for the Moores and the court fell into the error of assuming the law to be that a co-defendant had no right to impeach another co-defendant who assumed to take the witness stand and testify against him, apply-

ing thereto the doctrine which universally protects persons charged with crime in this jurisdiction from being forced to give testimony against themselves, and which also prohibits the state from attacking the character of any defendant until the same is placed in issue by him. That question doesn't arise in this connection. If a person charged with crime takes the stand voluntarily, and becomes a witness either for himself or against a co-defendant, he becomes a witness, and in so far as his reputation for truthfulness may affect the general issue, he may be impeached just as any other witness may be impeached for like cause. In other words, when a person charged with crime becomes a voluntary witness, he is subject to the rules of law that govern witnesses, regardless of whether they are charged with the offense on trial or not. As is said by one of the law writers on evidence: "Where a co-party is called against his co-party, for the opponent, it seems clear that the co-party against whom he testifies, may impeach him."

And again, "Where a co-defendant in a criminal prosecution testifies for himself, the other co-defendant may impeach him, because their interest, as between each other, are distinct, and because the witness has been called by himself and not by the impeacher; and the same consequence follows for witness called by one co-defendant." In *Goff* v. *The State,* 117 N. Carolina, 755, 23 S. E., 355, the Supreme Court of North Carolina had under consideration the identical proposition here at issue. Among other things in the discussion, is the following:

"This was an indictment for an affray, in which the theory of the state was that the defendants, John Goff and the two Kearneys, were guilty combatants on the one side, and the defendant, Gerganus, who was acquitted by the jury, was a willing participant on the other side. After offering two witnesses on behalf of the state, the solicitor, following the usual practice, rested, and gave the parties the opportunity each to offer testimony criminating his antagonist or antagonists in order to exculpate himself. In such contest the witnesses for the side stand, as to the parties on the other, in the relation of prosecuting witnesses and defendants; and hence it is the universal practice to compel them to submit to cross-examination with all the rights

which are incident thereto, when they are examined in chief on behalf of the state. The appellants had introduced their testimony, and when Gerganus was upon the stand, as a witness in his own behalf, the other defendants had the same right to impeach him on cross-examination as though he had been a witness of the state, instead of a co-defendant. The state might have impeached him and the same privilege should have been allowed to his co-defendants. If the questions propounded by the counsel tended to elicit testimony showing the temper and bad blood of Gerganus toward his co-defendants, and was offered, not alone as substantive testimony against him as a defendant, but also in order to impeach him as a witness, it was unquestionably competent to examine the witnesses whose names had been mentioned in connection with the time and place of making the declaration to contradict his denial that he made them."

The same principle is discussed in *McGruder, et al* v. *The State,* 71 Ga. 864, wherein the Supreme Court of Georgia had under consideration a similar question arising out of a burglary charge. In that case, among other things, the court says:

"Where two defendants agreed to be tried jointly, with the right in each to testify on behalf of the other, as if tried separately, each could be impeached as a witness for the other. Therefore an indictment for larceny, with the plea of guilty thereon by one of them, was admissible to impeach him, as if he had been testifying on a separate trial of his co-defendant, though not admissible to show guilt in the present case."

In *State* v. *Hardin, et al.,* 46 Ia. 623, 26 Am. Rep. 174, the Iowa Supreme Court said: "One of two indicted persons, testifying on behalf of his co-defendant, is subject to impeachment like ayn other witness." See also *State* v. *Pfofferle,* 36 Kans. 90, 12 Pac. 406, in which the court said:

"A co-defendant who voluntarily became a witness, and has not appealed, was asked by the state, on cross-examination, if he had not been recently tried and convicted several times for the unlawful sale of intoxicating liquors, and over objection gave an affirmative answer. Held to be no error.

"Where a defendant in a criminal case takes the witness stand in his own behalf he assumes the character of a witness, and is entitled to the same privileges, and is subject to the same

treatment, and to be contradicted, discredited or impeached, the same as any other witness."

From the foregoing authorities, and upon sound principle, the court was in error in his ruling that plaintiffs in error in the case at bar were not entitled to the privilege of introducing competent proof tending to impeach Moore for truthfulness in the community in which he lived, as they would have been any other witness in the case. Of course it would have become the duty of the court, when such condition arose, to caution the jury that the purpose of the testimony was limited to impeaching Moore in the interests of the Frazees. This is a burden that the court undertook to relieve the state from, which is one of the reasons why care should be exercised in denying a severance in cases of this character.

For the error indicated, the judgment is reversed and the cause remanded with direction to grant a new trial.

DOYLE, P. J., concurs; FURMAN, J., absent.